**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TOM SORENSEN, individually and on behalf all others similarly situated, | |
| *Plaintiff,* | Civil Action No. |
| v. | 1:22-cv-05522 |
| TURNER BROADCASTING SYSTEM, INC. d/b/a BLEACHER REPORT, INC., | |
| *Defendant.* | |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

WEIL, GOTSHAL & MANGES LLP

767 Fifth Avenue
New York, NY 10153
(212) 310-8000

BRYAN CAVE LEIGHTON PAISNER LLP

161 North Clark Street, Suite 4300
Chicago, Illinois 60601

*Attorneys for Defendant*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD FOR MOTION TO DISMISS ............................................................ 6

ARGUMENT .......................................................................................................................... 7

I.      Plaintiff Consented to a Class Waiver, Barring His Putative Class Claims. .................... 7

II.     Plaintiff Fails to State an Individual Claim Under the VPPA. ......................................... 7

      A.      Defendant is Not a Video Tape Service Provider Under the VPPA. ..................... 7

      B.      Plaintiff Has Not Plausibly Alleged That Bleacher Report Provided
            Prerecorded Video Materials to Him. ................................................................... 9

      C.      Plaintiff Has Not Plausibly Alleged That Defendant Disclosed PII. ..................... 9

      D.      Plaintiff Has Not Plausibly Alleged Defendant "Knowingly" Disclosed
            PII. ....................................................................................................................... 10

      E.      Defendant Met the VPPA's Requirements in Obtaining Plaintiff's Consent
            to the Alleged Disclosure. .................................................................................... 11

III.    Plaintiff Lacks Article III Standing. ................................................................................ 12

      A.      Plaintiff Has Not Suffered an Injury in Fact. ...................................................... 12

      B.      Plaintiff's Injury Is Not Fairly Traceable to the Challenged Conduct. ................ 14

CONCLUSION .................................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Angelo v. Moriarty*,
No. 15 C 8065, 2016 WL 640525 (N.D. Ill. Feb. 18, 2016).....................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................6

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015)..................................................................8, 14

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
Case No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230 (S.D.N.Y. Aug. 11,
2017) .................................................................................................................10

*Ciccone v. Cavalry Portfolio Servs., LLC*,
No. 21-cv-2428 (JS) (JMW), 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) ........13

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) .............................................................................10

*Geinosky v. City of Chi.*,
675 F.3d 743 (7th Cir. 2012) ............................................................................3, 4

*Hepp v. Ultra Green Energy Servs., LLC*,
No. 13 C 4692, 2016 WL 1073070 (N.D. Ill. Mar. 18, 2016). Bleacher Report ......5

*Horton v. Dow Jones & Co., Inc.*,
804 F. App'x 81 (2d Cir. 2020) ...........................................................................7

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ...............................................................2, 10

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014).....................14

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
48 F.4th 1236 (11th Cir. 2022) (*en banc*) ...........................................................13

*Jeong-Su Kim v. McDonald's USA, LLC*,
No. 21-CV-05287, 2022 WL 4482826 (N.D. Ill. Sept. 27, 2022) .........................13

*Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
719 F.3d 601 (7th Cir. 2013) .............................................................................15

*Leocal v. Ashcroft*,
   543 U.S. 1 (2004)........................................................................................................8

*Louth v. NFL Enters. LLC*,
   No. 121CV00405MSMPAS, 2022 WL 4130866 (D.R.I. Sept. 12, 2022)................9

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)..................................................................................................14

*Miracle-Pond v. Shutterfly, Inc.*,
   No. 19 CV 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020)............................5

*In re Nickelodeon Consumer Priv. Litig.*,
   827 F.3d 262 (3d Cir. 2016)...................................................................................8, 9

*Niiranen v. Carrier One*, *Inc.*,
   No. 20-CV-06781, 2022 WL 103722 (N.D. Ill. Jan. 11, 2022)..............................7

*Parungao v. Cmty. Health Sys., Inc.*,
   858 F.3d 452 (7th Cir. 2017) ...................................................................................8

*Parvati Corp. v. City of Oak Forest*,
   630 F.3d 512 (7th Cir. 2010) .......................................................................6, 14, 15

*Reed v. MRS BPO, L.L.C.*,
   No. 1:21-CV-04066, 2022 WL 3908666 (N.D. Ill. Aug. 30, 2022) ......................13

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015)...............................................................10, 11

*Sharif v. Wellness Int'l Network, Ltd.*,
   376 F.3d 720 (7th Cir. 2004) ...................................................................................1

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)............................................................................................6, 14

*St. Louis Heart Center, Inc. v. Nomax, Inc.*,
   899 F.3d 500 (8th Cir. 2018) .................................................................................15

*Stark v. Patreon, Inc.*,
   No. 22-CV-03131-JCS, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022)...............8, 9

*Stark v. Patreon, Inc.*,
   No. 3:22-cv-03131-JCS (N.D. Cal.), ECF No. 49-1 ...............................................8

*Sterk v. Redbox Automated Retail, LLC*,
   770 F.3d 618 (7th Cir. 2014) .................................................................................13

*In re TikTok, Inc., Consumer Priv. Litig.*,
No. 20 C 4699, 2022 WL 2982782 (N.D. Ill. July 28, 2022), *appeal filed*, No.
22-2682 (7th Cir. Sept. 21, 2022) ........................................................................................13

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ...............................................................................................6, 12, 13

*Tudela v. Medicredit, Inc.*,
No. 21 C 5515, 2022 WL 2828754 (N.D. Ill. July 20, 2022) ....................................................6

*Wilson v. Triller, Inc.*,
598 F. Supp. 3d 82 (S.D.N.Y. 2022) .........................................................................................9

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 *et. seq.* ...................................................... *passim*

**Other Authorities**

S. Rep. No. 100-599 (1988) .............................................................................................................1

134 Cong. Rec. S5397-01 .................................................................................................................7

Bleacher Report, https://bleacherreport.com/ ................................................................... *passim*

Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/ ...............................4, 9, 15

Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/ ....................................4, 9

Facebook, *Cookies Policy*, https://www.facebook.com/privacy/policies/cookies........................15

Internet Archive, Wayback Machine, http://web.archive.org/ .................................................5, 12

ICANN, *Domain Registration Database*, https://lookup.icann.org/en/lookup .............................1

Defendant Turner Broadcasting System, Inc. d/b/a Bleacher Report, Inc. ("Defendant" or "Bleacher Report"),[1] respectfully submits this memorandum of law in support of its motion to dismiss the Complaint.[2]

## PRELIMINARY STATEMENT

This lawsuit is part of a broader campaign to expand the reach of a 1980s-era privacy law—the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. (the "VPPA")—to circumstances that differ sharply from those that motivated the statute's passage in an effort to cash in on statutory damages.  In under twelve months, the plaintiff bar has filed almost 100 separate VPPA class action lawsuits against a wide array of defendants—all focused on commonly employed digital practices with no connection to the VPPA's original intent.

The VPPA traces back to Judge Robert Bork's nomination to the Supreme Court, when a movie rental store provided Judge Bork's movie rental history to a Washington newspaper, which then published a profile about Judge Bork based on "the titles of 146 films his family had rented."  Congress responded with the VPPA.  S. REP. NO. 100-599, at 5-6 (1988).  The VPPA permits a consumer of a "video tape service provider" to assert a claim against a video tape service provider who "knowingly" disclosed their "personally identifiable information" ("PII").  18 U.S.C. § 2710.  Far from the intrusive disclosure of Judge Bork's video viewing history to a reporter, Plaintiff challenges a routine industry practice of using the Facebook Pixel, a tool

---

[1] The Complaint names Turner Broadcasting System, Inc. d/b/a Bleacher Report, Inc. as the Defendant. Turner Broadcasting System, Inc., however, is not the proper Defendant.  Bleacher Report, Inc. is the owner of BleacherReport.com and the proper Defendant.  See https://lookup.icann.org/en/lookup (listing "The Bleacher Report, Inc." as the registrant of the BleacherReport.com domain).  Bleacher Report, Inc., however, responds herein.

[2] Defendant is also filing a motion to compel arbitration, which Defendant requests be resolved before this motion to dismiss.  In filing this motion to dismiss, Defendant does not waive its right to arbitrate. *See Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004).

Facebook offers to websites for analyzing aggregate user interactions and optimizing ad campaigns on Facebook.[3]

Setting aside that the Complaint and the other lawsuits in this recent flood improperly stretch the VPPA's scope, the claims here must be dismissed for at least three reasons. First, Plaintiff's purported class claims fail because, as is clear from Defendant's judicially noticeable Terms of Use, Plaintiff agreed to a class waiver. Second, Plaintiff does not plausibly allege facts needed to support his VPPA claim, namely: (a) that Defendant is a video tape service provider, (b) that Defendant provided prerecorded (as opposed to live) video materials to him, (c) that Defendant disclosed his alleged PII, or (d) that Defendant disclosed his alleged PII knowingly; and, in any event, his VPPA claim also fails because Defendant obtained his consent to the exact activity about which he now complains. Third, Plaintiff lacks injury and therefore standing: He alleges, at most, an intangible harm lacking a close relationship to those traditionally recognized at common law. Moreover, to the extent he suffered any injury, it was caused by the operation of Facebook's cookies and his conduct, and so is not fairly traceable to Defendant's conduct.

## BACKGROUND

*The Parties.* Bleacher Report provides a destination for fans looking for the intersection of sports and culture. It distributes sports news and commentary free of charge via its website, BleacherReport.com, and its Bleacher Report apps. Bleacher Report's content covers a wide range of professional and college sports, including basketball, football, hockey, mixed martial

---

[3] This is not the first time the plaintiff bar has attempted to use the VPPA to target one of Facebook's ubiquitously employed business tools. Indeed, *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1093-94 (N.D. Cal. 2015), also focused on disclosures occurring via the Facebook "Like" button. There, Hulu won summary judgment because plaintiffs could not establish Hulu knew "that Facebook might combine a Facebook user's identity . . . with the watch-page address" to yield PII. *Id.* at 1097.

arts, and eSports.  Compl. ¶ 14; Bleacher Report, *Home Page*, https://bleacherreport.com/.[4]

In an effort to employ terminology taken from the VPPA, Plaintiff alleges that he "subscribed to a Bleacher Report account" in 2015.  Compl. ¶ 42.  In fact, while visitors to Bleacher Report have the option to create accounts through the BleacherReport.com website, no "subscription" results through this action, and individuals can access content on the website regardless of whether they create an account.  *See* Bleacher Report, *Home Page*, https://bleacherreport.com/.  Plaintiff also alleges he "subscribed" to "several of Bleacher Report's online newsletters" (Compl. ¶ 42).  In fact, the Bleacher Report website offers users the opportunity to "sign up" for newsletters (free of charge), in order to receive periodic emails sent to the users' inbox, which are distinct and set apart from video content on the website.  *See* Bleacher Report, *Newsletter Sign-Up*, https://bleacherreport.wyng.com/manage-inbox?page=page_3857924938674.

Plaintiff alleges he "viewed Video Media via Bleacher Report's website" while logged into his Facebook account.  Compl. ¶ 43.  But Plaintiff never specifies whether he viewed prerecorded or live-streamed video content, though Defendant offers both (*e.g.,* Bleacher Report, *All Elite Wrestling PPV*, https://bleacherreport.com/videos/all-elite-wrestling-ppv#main).

***The Alleged Disclosures.***  Plaintiff points to Facebook IDs ("FIDs"),[5] names and email addresses, but never alleges names or email addresses were actually <u>transmitted by Defendant to Facebook</u>.  Compl. ¶¶ 5, 31, 34, 35.  At most, Plaintiff vaguely alleges Defendant discloses

---

[4] The Court may consider the Bleacher Report website because (a) it is judicially noticeable since it is publicly available and not reasonably subject to dispute, (b) Plaintiff references material from it (*e.g.*, Compl. n.3, ¶¶ 23, 24, 37), and (c) whether Bleacher Report is a video tape service provider is central to Plaintiff's claim.  *See, e.g., Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[5] According to Plaintiff, "[a]n FID is a unique and persistent identifier that Facebook assigns to each user."  Compl. ¶ 31.

unspecified "personal information" and "sensitive data" to third parties. *Id.* ¶¶ 3, 4, 8, 39.

Plaintiff also alleges that BleacherReport.com "hosts" the Facebook Pixel to "share[]" video-viewing information, and that as part of this alleged disclosure, digital subscribers' "FIDs" are collected and transmitted through "personally identifiable FID cookies." *Id.* ¶¶ 26, 31. The only personally identifiable FID cookie Plaintiff identifies by name is Facebook's c_user cookie, *id.* ¶ 38, which Facebook (not Defendant) places on visitors' browsers to "keep [its users] logged in" and to "remember [users'] browser[s] so [they] don't have to keep logging in to Facebook." Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/.[6]

Plaintiff cannot and does not allege that the c_user cookie is Defendant's cookie, or relatedly, that Defendant is involved in the cookie's placement or transmission to Facebook. Indeed, Facebook's website establishes the c_user cookie is Facebook's, not Defendant's. Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/. Plaintiff also fails to allege an ordinary person could access information contained within the c_user cookie, let alone identify an individual's video-watching behavior by using the cookie.

Given the c_user cookie is Facebook's cookie, it cannot be that Defendant "discloses the subscriber's FID and viewed Video Media to Facebook together in a single transmission," or that Defendant did so "knowingly," since information from the c_user cookie is sent by Facebook to itself. Compl. ¶ 6. Relatedly, Plaintiff does not plausibly allege Defendant was aware that PII and video watching information were sent to Facebook in a manner that would enable an ordinary person to know what videos users watched; instead the Complaint claims in a conclusory fashion that the Pixel's functionality evidences Defendant's knowledge. *Id.* ¶ 33.

---

[6] The Court may consider Facebook's website because (a) it is publicly available and not reasonably subject to dispute, (b) Plaintiff references material from it (*e.g.*, Compl. ¶ 32), and (c) whether Defendant is involved in the disclosure is central to Plaintiff's claim. *See Geinosky*, 675 F.3d at 745 n.1.

***The Class Waiver.***  Defendant's Terms of Use—which Plaintiff agreed to when creating his account (*Id.* ¶ 42)—provide: "You and Bleacher Report agree that . . . each party may bring claims . . . against the other only in an individual capacity, and not participate as a plaintiff, claimant, or class member in any class, collective, consolidated . . . or representative proceeding."  Bleacher Report, *Terms of Use* § 17, https://bleacherreport.com/pages/terms. Every version of the Terms that have existed since Plaintiff claims to have begun using Bleacher Report has contained a nearly identical class waiver, allowing claims only to be brought on an "individual basis" or in an "individual capacity," and prohibiting participation in class actions.[7]

***The Privacy Policy.***  Defendant's Privacy Policy—which Plaintiff also agreed to when creating his account (*see* Compl. ¶ 42)—discloses that: (a) "[w]e may collect information" about "how you use . . . our Sites, and information about content . . . you have been shown or have clicked on," (b) Defendant and its "business partners may send 'cookies' to your computer or use similar technologies," and (c) "[w]e may also share Information" with third parties "that may want to market products or services to you."  Bleacher Report, *Privacy Policy*, https://www.warnermediaprivacy.com/policycenter/b2c/WMG/en-us/.  Throughout the relevant period, the Policy has had substantially similar terms and been posted on the website.  Defendant has also used pop-ups to notify visitors that they agree to the Policy by using the website.[8]

---

[7] The 2015 and 2019 Bleacher Report Terms of Use are available via the Wayback Machine (*see* http://web.archive.org/web/20161029092940/http://bleacherreport.com/pages/terms, http://web.archive.org/web/20191224210257/https://bleacherreport.com/pages/terms), which the Court may take judicial notice of.  *Hepp v. Ultra Green Energy Servs., LLC*, No. 13 C 4692, 2016 WL 1073070, at *2 n.1 (N.D. Ill. Mar. 18, 2016).  Bleacher Report reserved the right to modify its Terms and Privacy Policy, and this District has recognized contracting parties' ability to update website terms with prior consent.  *Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099, at *5 (N.D. Ill. May 15, 2020); http://web.archive.org/web/20170119133516/http://bleacherreport.com/pages/privacy.

[8] That the Privacy Policy has contained substantially similar terms and been posted on the website during the relevant period can be verified via the Wayback Machine.  *E.g.*, https://web.archive.org/web/20161026102017/http://bleacherreport.com/;

A section labelled with a bold, 'all caps' heading, titled "YOUR CHOICES AND CONTROLS," informs visitors that they can opt out of "collection, use, and transfer of data [for] targeted advertising" by visiting Defendant's "Opt-Out page." A hyperlink, which visitors can click to access the Opt-Out page, appears next to the words "Opt-Out page." Bleacher Report, *Privacy Policy*, https://www.warnermediaprivacy.com/policycenter/b2c/WMG/en-us/. The Opt-Out page provides "[c]hoices for [opting out of] third-party targeted advertising" via certain advertising self-regulatory programs. Bleacher Report, *Opt-Out Page*, https://www.warnermediaprivacy.com/opt-out/. In addition, at the bottom of the website, visitors can click the hyperlinked phrase "Do Not Sell or Share My Personal Information," opening a pop-up window in which they can toggle a button to turn off data sharing with third parties. *See* Bleacher Report, *Home Page*, https://bleacherreport.com/. Plaintiff does not allege that he chose to avail himself of any of these options.

## LEGAL STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) requires dismissal where a complaint lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Conclusory legal allegations are not entitled to" the assumption of truth, "unless supported by factual allegations that plausibly give rise to the entitlement of relief." *Tudela v. Medicredit, Inc.*, No. 21 C 5515, 2022 WL 2828754, at *1 (N.D. Ill. July 20, 2022). A complaint must also be dismissed under Rule 12(b)(1) if the plaintiff lacks standing. *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010). To establish standing, the plaintiff must show that "he suffered an injury in fact" that is (i) "concrete, particularized, and actual or imminent," (ii) "likely caused by the defendant," and (iii) "would

---

http://web.archive.org/web/20200101072528/https:/bleacherreport.com/pages/privacy. The pop-ups can also be viewed on the Wayback Machine and are discussed in the motion to compel. *See id.*; MTC at 2-4.

likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). In assessing standing, federal courts consider whether the "asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts," *id*. at 2200, and whether the plaintiff alleged "a bare procedural violation, divorced from any concrete harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341-42 (2016).

## ARGUMENT

I.  **Plaintiff Consented to a Class Waiver, Barring His Putative Class Claims.**

When Plaintiff created his Bleacher Report account through the BleacherReport.com website, he agreed to the Bleacher Report Terms of Use, which contain a conspicuous class waiver. *See* Compl. ¶ 42. This class waiver—which permits Plaintiff to bring his claim "only in an individual capacity," and not as a "class member in any class, collective, consolidated, private attorney general, or representative proceeding"—should be enforced according to its terms, and his class claims must be dismissed. Bleacher Report, *Terms of Use* § 17, https://bleacherreport.com/pages/terms;[9] *Niiranen v. Carrier One*, *Inc.*, No. 20-CV-06781, 2022 WL 103722, at *8-9 (N.D. Ill. Jan. 11, 2022) (dismissing class claims where plaintiffs consented to a class action waiver); *Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84-85 (2d Cir. 2020) (summary order) (finding the "class-waiver provision bars [plaintiff] from proceeding on a class basis," and affirming dismissal). In short, Plaintiff cannot bring this claim as a class action.

II.  **Plaintiff Fails to State an Individual Claim Under the VPPA.**

A.  **Defendant Is Not a Video Tape Service Provider Under the VPPA.**

Plaintiff's VPPA claim is facially deficient. To bring a VPPA claim, an individual must purchase, rent, or subscribe to goods or services from a "video tape service provider." A "video tape service provider" is defined, in relevant part, as "any person, engaged in the business . . . of

---

[9] While the Terms of Use point to New York law, Illinois and New York law are consistent on this issue. Bleacher Report, *Terms of Use* § 15, https://bleacherreport.com/pages/terms.

rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18

U.S.C. §§ 2710(a)(1), (a)(4).  This Circuit has not determined whether a sports news and

commentary website like BleacherReport.com falls within the statute's ambit, but applying the

VPPA here would clearly stretch the statute beyond its intended bounds.  *See* 134 Cong. Rec.

S5397-01 (emphasis added) (explaining the VPPA ensures "that individuals will maintain

control over their personal information when renting or purchasing *a movie* . . . .").  Indeed, the

federal government has recognized "the VPPA does not impose liability on any entity other than

a 'video tape service provider' for revealing [PII]—including any news organization."  United

States of America's Memorandum in Support of the Constitutionality of the Video Privacy

Protection Act at 18, *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS (N.D. Cal.), ECF No. 49-1.[10]

Moreover, to the extent visitors access pre-recorded videos on the website, they can do so

regardless of whether they sign up for newsletters or create accounts.[11]

Importantly, because the VPPA was codified as a ***criminal*** statute with civil penalties, it

must be construed narrowly so it is not applied in situations not clearly contemplated by the

legislature.[12]  *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (if a statute has criminal and non-

criminal applications, the rule of lenity must be applied consistently to both).  Bleacher Report's

sports news and commentary offering is a far cry from the video rental store that disclosed Judge

Bork's rental history to a reporter, making application of the VPPA entirely inappropriate.  *See*

---

[10] "Courts may take judicial notice of court filings . . . when the accuracy of those documents reasonably cannot be questioned."  *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017).

[11] Bleacher Report offers certain live-streamed pay-per-view events which are not covered by the VPPA. Bleacher Report, *All Elite Wrestling PPV*, https://bleacherreport.com/videos/all-elite-wrestling-ppv#main. In addition, to the extent Plaintiff's claim is based on a newsletter sign-up (Compl ¶ 42), his purported "subscription" is "distinct and set apart" from any video content on BleacherReport.com and does not suffice here.  *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 671 (S.D.N.Y. 2015).

[12] Title 18 of the U.S. Code deals with "Crimes and Criminal Procedure."

*In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) ("Congress's purpose in passing the [VPPA] was quite narrow . . . [w]e do not think that . . . it intended for the law to cover factual circumstances far removed from those that motivated its passage.").

**B.     Plaintiff Has Not Plausibly Alleged That Bleacher Report Provided Prerecorded Video Materials to Him.**

While this Court has not yet addressed whether the VPPA covers live-streamed videos, every court to consider the issue has found that "a video must be prerecorded to fall within the VPPA's definition of 'similar audio visual materials.'"  *Stark v. Patreon, Inc.*, No. 22-CV-03131-JCS, 2022 WL 7652166, at *6 (N.D. Cal. Oct. 13, 2022); *Louth v. NFL Enters. LLC*, No. 121CV00405MSMPAS, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (finding that "live content" should not be included as a "similar audio visual material" under the VPPA).  Because Plaintiff never alleges the Bleacher Report videos he watched were prerecorded (as opposed to live-streamed), he has not alleged Defendant provided "similar audio visual materials" to him as required for his claim.  18 U.S.C. § 2710(a)(4).  His claim should be dismissed on this basis as well.  *Patreon*, 2022 WL 7652166, at *4-6 (plaintiffs' failure to specify whether the videos they watched were "broadcast live or prerecorded" required dismissal of their VPPA claim).

**C.     Plaintiff Has Not Plausibly Alleged That Defendant Disclosed PII.**

While the Complaint alleges that Defendant discloses Plaintiff's video viewing history to Facebook via the Pixel, that does not suffice to plausibly allege that Defendant disclosed PII. The VPPA defines PII as information "which identifies a person" as having requested or obtained specific video materials.  18 U.S.C. § 2710(a)(3).  Attempting to satisfy this definition, Plaintiff alleges his identifying information was "disclosed" to Facebook by way of the c_user cookie.  Compl. ¶ 38.  The c_user cookie, however, is Facebook's, so to the extent the cookie was "disclosed," that disclosure occurred from Facebook to itself.  *Facebook*, Cookies Policy,

https://www.facebook.com/policy/cookies/. Accordingly, it cannot be Defendant who "disclosed" this cookie, or combined it with video viewing information.

In addition, Plaintiff does not and cannot allege that an ordinary person could use the cookie to "identify a specific individual's video-watching behavior" as required to plausibly allege that PII was disclosed. *Nickelodeon*, 827 F.3d at 284, 290; *Wilson v. Triller, Inc*., 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022) (finding the "ordinary person" standard for PII to be "the correct one."). Whether Facebook can itself read the c_user cookie does not bear on whether Defendant disclosed PII, because the abilities of a recipient do not dictate what constitutes PII. *Eichenberger v. ESPN, Inc*., 876 F.3d 979, 985 (9th Cir. 2017) (PII "must have the same meaning without regard to its recipient's capabilities."). Under the facts alleged and the governing law, Plaintiff has failed to plausibly allege facts suggesting that Defendant disclosed PII in any manner, much less one that violates the VPPA.

    **D.    Plaintiff Has Not Plausibly Alleged Defendant "Knowingly" Disclosed PII**.

Plaintiff relies on conclusory allegations that Defendant "knowingly disclosed" PII, and asserts that the Pixel's functionality demonstrates Defendant's knowledge (*see* Compl. ¶ 33), ignoring that he cannot simply allege Defendant transmitted information sufficient to *reconstruct* PII to state a VPPA claim. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 181, 183 (S.D.N.Y. 2015) (if a third party has to "reverse engineer" PII, there can be no knowing disclosure); *see Hulu*, 86 F. Supp. 3d at 1099 (no viable VPPA claim where Hulu "did not know" c_user cookies would be combined with video titles). Defendant is responsible for grasping the "nature of the information actually disclosed," not "the informational capabilities of any third-party recipient" like Facebook. *See Robinson*, 152 F. Supp. 3d at 181-82. If, as here, a defendant "did not think it was conveying PII, then there could be no knowledge of the conveyance." *Bernardino v. Barnes & Noble Booksellers, Inc*., Case No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at

10

*9 (S.D.N.Y. Aug. 11, 2017), *adopted by*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017).

Because the c_user cookie is transmitted by Facebook to itself, Defendant could not have knowingly disclosed PII, let alone done so in "one data point." Compl. ¶ 35. It is "the information actually 'disclose[d]' by a 'video tape service provider,' which must itself do the identifying that is relevant for purposes of the VPPA . . . not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *Robinson*, 152 F. Supp. 3d at 182 (citation omitted). And despite claiming that Defendant "disclosed" his FID (Compl. at 1, ¶ 44), Plaintiff never actually alleges Defendant *knew* his FID. And indeed, since Facebook—not Defendant—placed the cookie allegedly containing Plaintiff's FID and is not alleged to have shared this information with Defendant, Plaintiff cannot plausibly allege that Defendant knowingly disclosed PII.

### E. Plaintiff Consented to the Alleged Disclosure.

In addition, Defendant here has met the VPPA's three requirements in obtaining individuals' consent to disclosure. First, the Privacy Policy is "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i). While Defendant has separate Terms of Use dedicated to other topics, its Privacy Policy concerns only collection and sharing of personal information. Bleacher Report, *Privacy Policy*, https://www.warnermediaprivacy.com/policycenter/b2c/WMG/en-us/. Indeed, the Policy notifies individuals about the exact type of disclosure complained of here, explaining that Defendant (a) may collect information about individuals' use of the sites including content that they "have been shown" or "clicked on," (b) that it uses cookies and similar technologies, and (c) that it may share such information with third parties for advertising purposes. Bleacher Report, *Privacy Policy*, https://www.warnermediaprivacy.com/policycenter/b2c/WMG/en-us/.

Second, Defendant met the requirement that consent to the Policy be "given at the time

11

the disclosure is sought." 18 U.S.C. § 2710(b)(2)(B)(ii). Plaintiff agreed to the Privacy Policy when creating his Bleacher Report account through the BleacherReport.com website, consenting in advance to the alleged disclosures. *See* Compl. ¶ 42. Moreover, the Policy has been posted on the website at all relevant times, and Defendant has also at various points used banner pop-ups to notify website visitors of the Privacy Policy.[13] Because visitors encountered the Privacy Policy when they landed on the website, which is when disclosure of PII via the Facebook Pixel allegedly occurred (Compl. ¶ 30), consent was "given at the time the disclosure [was] sought."

Third, Defendant clearly and conspicuously allows visitors to opt out of information sharing. 18 U.S.C. § 2710(b)(2)(B)(iii). In the website footer, visitors can click the hyperlinked phrase "Do Not Sell or Share My Personal Information," opening a pop-up window in which they can toggle a button to turn off data sharing with third parties. *See* Bleacher Report, *Home Page*, https://bleacherreport.com/. Moreover, in a section clearly labelled "YOUR CHOICES AND CONTROLS," the Privacy Policy notifies individuals they can opt out of information sharing "for interest-based or targeted advertising" by visiting an "Opt-Out page." The words "Opt-Out page" contain a hyperlink that individuals can click to access a page presenting choices for opting out of targeted advertising via certain advertising self-regulatory programs. Bleacher Report, *Privacy Policy*, https://www.warnermediaprivacy.com/policycenter/b2c/WMG/en-us/; Bleacher Report, *Opt-Out Page*, https://www.warnermediaprivacy.com/opt-out/.

## III. Plaintiff Lacks Article III Standing.

### A. Plaintiff Has Not Suffered an Injury in Fact.

Where, as here, a plaintiff alleges only an intangible harm, such harm confers standing only if it "has a 'close relationship' to a harm traditionally recognized as providing a basis for a

---

[13] This can be verified via the Wayback Machine. *See, e.g.,* https://web.archive.org/web/20161026102017/http://bleacherreport.com/.

lawsuit in American courts[.]" *TransUnion*, 141 S. Ct. at 2200, 2204; Compl. ¶ 45. While federal courts have recognized privacy torts such as public disclosure of private facts and intrusion upon seclusion, neither bears a "close relationship" to the harm alleged here. *See Reed v. MRS BPO, L.L.C.*, No. 1:21-CV-04066, 2022 WL 3908666, at *4 (N.D. Ill. Aug. 30, 2022) (disclosure of personal information to a third party vendor was not analogous to public disclosure of private facts where, as here, plaintiff did not allege her information was made public); *Angelo v. Moriarty*, No. 15 C 8065, 2016 WL 640525, at *4 (N.D. Ill. Feb. 18, 2016) (citations omitted) (the "core" of intrusion upon seclusion is "offensive prying into the private domain of another," not disclosure); *see also Sputz v. Alltran Fin., LP*, No. 21-CV-4663 (CS), 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021) (the common law does not "protect[] against the exposure of private information to an inanimate object like a computer.").[14]

While *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) found alleged disclosure of PII in violation of the VPPA sufficed to establish Article III standing, that case was decided before *TransUnion*, which "materially changed" district courts' analyses of standing in consumer class actions. *Ciccone v. Cavalry Portfolio Servs., LLC*, No. 21-cv-2428 (JS) (JMW), 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021). *TransUnion* "put more meat on the bones" of the historical analogue approach, "adding that when an element 'essential to liability' at common law is missing . . . the common-law comparator is not closely related to that harm." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1244 (11th Cir. 2022) (*en banc*). This District has recognized the change brought by *TransUnion*, indicating a standing challenge to a VPPA claim could be viable. *In re TikTok, Inc., Consumer Priv. Litig.*,

---

[14] Moreover, Plaintiff here has not explained how the alleged disclosure would be "highly offensive to a reasonable person," as both torts require. *Jeong-Su Kim v. McDonald's USA, LLC*, No. 21-CV-05287, 2022 WL 4482826, at *6-7 (N.D. Ill. Sept. 27, 2022).

No. 20 C 4699, 2022 WL 2982782, at *23 (N.D. Ill. July 28, 2022) ("Defendants also could argue that Plaintiffs lack Article III standing to bring some of their claims, given that a 'bare procedural violation' of a federal statute, without more, does not confer standing"), *appeal filed*, No. 22-2682 (7th Cir. Sept. 21, 2022).

Here, as Plaintiff alleges, the Privacy Policy disclosed that Defendant may collect and share information about visitors' use of its website. Compl. ¶ 24. Plaintiff's allegation therefore boils down to the claim that the disclosure in the Policy does not meet the requirements of a "distinct and separate" consent set forth in 18 U.S.C. § 2710(b)(2). While the Policy does meet these requirements as explained above, any failure to meet this requirement would be at most a "bare procedural violation" failing to satisfy Article III's "concrete injury" requirement. *Spokeo*, 578 U.S. at 341-42 (noting a bare procedural violation of the FCRA may result in no harm). Plaintiff has similarly failed to allege a concrete injury here.

### B. Plaintiff's Injury Is Not Fairly Traceable to the Challenged Conduct.

To establish standing, Plaintiff's injury also must be "fairly traceable" to Defendant's conduct, not be "self-inflicted," and not be the result of "the independent action of some third party not before the court." *Parvati*, 630 F.3d at 518; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). But here, to the extent Plaintiff's c_user cookie was transmitted, *it was the result of his actions*. Plaintiff must have (1) logged into Facebook, (2) accessed another website on the same browser, and (3) remained logged into Facebook. *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *5 (N.D. Cal. June 17, 2014) ("When the 'remember me' box is checked, Facebook sets the c_user cookie"); *Austin-Spearman*, 98 F. Supp. 3d at 664 ("[I]f a person has chosen to remain logged into Facebook . . . this 'c_user' cookie will continue to operate. . . ."). Indeed, Plaintiff could prevent transmission of the cookie at any time simply by "logging out of Facebook." *Hulu*, 2014 WL 2758598, at *8, n.5 (citations omitted).

Defendant's disclosures explain clearly that it may use "cookies" and similar technologies for advertising purposes and explains that users can use their "browser settings to delete cookies and other tracking technologies." Bleacher Report, *Privacy Policy*, https://www.warnermediaprivacy.com/policycenter/b2c/WMG/en-us/. Facebook's disclosures similarly notify users that it uses cookies, including the c_user cookie, and that users can adjust their browser settings to "choose whether browser cookies are set and to delete them." Facebook, *Cookies Policy*, https://www.facebook.com/privacy/policies/cookies. These are settings that Plaintiff could have adjusted to prevent placement of the c_user cookie in the first place. In addition, Bleacher Report's website allows users to opt out of data sharing with third parties via the "Do Not Sell or Share My Personal Information" link at the bottom of the website. *See, e.g.,* Bleacher Report, *Home Page*, https://www.bleacherreport.com/.

Any transmission of Plaintiff's information to Facebook therefore occurred due to his actions and the operation of Facebook's cookie; it is not attributable to Defendant. *Parvati*, 630 F.3d at 518 (plaintiff's injury was not traceable to defendant's conduct where the injury resulted from plaintiff's own conduct); *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 602 (7th Cir. 2013) (no standing where injury resulted from a state court order freezing distributions from a retirement account, and not defendant's conduct). Indeed, in *St. Louis Heart Center, Inc. v. Nomax, Inc.*, 899 F.3d 500, 502, 504 (8th Cir. 2018), plaintiff's injury was not traceable to the challenged conduct where the plaintiff, as here, "both invited and did not rebuke" the challenged conduct—the *Nomax* plaintiff conceded that it "requested samples" of a product but then did not opt out of receiving faxes despite being provided with the opportunity to do so.

Accordingly, Plaintiff lacks standing and his claim should be dismissed.

## CONCLUSION

Defendant respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: New York, New York
       January 13, 2023

Respectfully submitted,

*/s/ David Yohai*

David L. Yohai (admitted *pro hac vice*)
Blake J. Steinberg (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
david.yohai@weil.com
blake.steinberg@weil.com

David R. Singh (admitted *pro hac vice*)
Amy T. Le (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
david.singh@weil.com
amy.le@weil.com

Brian A. Sher
Steven G. Trubac
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5000
Facsimile: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

*Attorneys for Defendant*